[Civ. No. 17343.   Second Dist., Div. Three.   Oct. 26, 1950.]

WALTER I. HEASLEY et al., Appellants, v. LOUIS BEVILACQUA et al., Respondents.

Claude A. Watson, Edward P. Hart and Montgomery G. Rice for Appellants.

Roger E. Kelly and Bauder, Gilbert, Thompson, Kelly & Veatch for Respondents.

WOOD (Parker), J.—Action for damages for personal injuries sustained by plaintiffs, husband and wife, as the result of alleged negligence of defendant Louis Bevilacqua, 16 years of age, who was driving an automobile which was owned by defendant Elmer Bevilacqua, the father of Louis. The verdict of the jury was in favor of defendants, and judgment was entered in accordance therewith. Plaintiffs appeal from the judgment and attempt to appeal from the order denying their motion for a new trial.

The accident occurred on December 4, 1947, about 8 p. m., near the intersection of Garvey Boulevard and Rosemead Place in the county of Los Angeles. Plaintiffs were traveling west in a westbound traffic lane on Garvey Boulevard in an automobile which was being driven by Mr. Heasley. As they were approaching the intersection, an automobile, which was traveling east in an eastbound traffic lane on Garvey Boule-

vard and which was being driven by defendant Louis, went from the eastbound lane into the westbound lane and collided with plaintiffs' automobile. Defendant Louis had an automobile operator's license and was driving the automobile with the permission of his father. Prior to the accident it had been raining heavily and at the time of the accident it was raining lightly. There was a large puddle of water at the intersection.

Garvey Boulevard extends east and west, is about 70 feet wide and is paved. In the center of the boulevard there is "a double white line," and on each side of the line there are two 10-foot traffic lanes which are paved with concrete and are separated by a single white line. Adjoining each of the outer lanes there is a 15-foot asphalt shoulder. Adjoining each shoulder there is a curb. Rosemead Place intersects Garvey Boulevard on the north side only. River Street intersects Garvey Boulevard on the south side only, and the east line of River Street is about 25 feet east of the east curbline of Rosemead Place. A sewer was under construction along the south asphalt shoulder of Garvey and, in order to divert surface water into River Street, an embankment about 3½ feet high, made of sand bags and dirt, had been built around the southwest corner of the intersection of Garvey Boulevard and River Street. The embankment on Garvey Boulevard commenced at a point about 10 feet west of the west curbline of River Street and extended northerly from the south curbline of Garvey about 20 feet—in other words, the 3½-foot embankment obstructed the south 20 feet (approximately) of Garvey at a point about 10 feet west of River Street. It extended across the 15-foot asphalt shoulder and across 5 feet or ½ of the outer (south) concrete traffic lane. About 1½ lanes on the concrete pavement, or a total width of 15 feet, remained open for eastbound traffic. The automobiles collided about 25 feet east of the east curbline of Rosemead Place and about 6 feet north of the center white line on Garvey. There was evidence that warning lights were on the embankment about 6:30 p.m., and that after the accident no warning light was there.

Defendant Louis Bevilacqua testified that he was traveling on Garvey in the inside eastbound traffic lane, about 2 feet south of the double line; there was other traffic on Garvey, both eastbound and westbound; he had been "following along in the general flow of traffic" at a speed of approximately 30

miles an hour, and the automobiles in front of him had been maintaining the same speed; there was an automobile to his right and about 30 feet ahead of him in the next or outside lane for eastbound traffic; he was driving a little faster than the other automobile was traveling; as he approached the intersection of Rosemead Place and Garvey Boulevard, the automobile, to his right in the next lane, was about 6 feet ahead of him and the driver of said automobile, without giving any signal, "pulled" into the path of the witness; he (witness) swerved a little to the left and applied the brakes but they did not take hold, and his automobile skidded over the double line into the inside lane for westbound traffic and collided with plaintiffs' automobile; he thought he skidded 30 or 40 feet; the automobile which had pulled in front of him continued traveling east on Garvey. He testified further that he was familiar with Garvey Boulevard in the vicinity of the accident, and he had driven on it prior to the date of the accident but had not noticed any construction work. He also testified that when he swerved to the left there was nothing in the lane to his right—it was "perfectly" clear, and he could have swung to his right; his headlights were on the low beam, and if no car was in front of him he imagined he could see a distance of 200 feet; the windshield wipers on his automobile were working; he did not see the embankment; the brakes did not hold because the street was wet; he had applied his brakes previously that evening and they had worked properly. In his deposition he said there was one automobile in the lane in which he was traveling, about 50 feet ahead of him; he had full view of traffic ahead at all times; he talked to the officers at the scene of the accident, and he talked to his father by telephone from a gasoline service station; he did not remember whether he told Mr. Heasley "it is all my fault"; he thought he told the service station attendant he was assuming full responsibility. He also testified he did not think he told the service station attendant he was assuming full responsibility.

Mr. Heasley, his two sons, a proprietor of a service station at the intersection, and two other persons testified that, at the scene of the accident, they heard defendant Louis say that the collision was his fault. Three of those persons testified that they heard Louis make that statement to a police officer.

A police officer, called as a witness by defendants, testified that Louis told him a car cut in front of him and he (Louis) applied his brakes but they failed to function because the

street was wet. He also testified that Louis did not tell him that he (Louis) was at fault and he would assume responsibility.

A deputy sheriff, called as a witness by plaintiffs, testified that, at the scene of the accident, Louis told him that he was traveling 30 or 35 miles an hour and a car pulled out suddenly in front of him and his car skidded.

It is conceded that appellants were not negligent.

Appellants contend in effect that the evidence was insufficient to support the judgment. They argue that defendant Louis was guilty of gross negligence; that the testimony of defendant Louis regarding the "third car" was uncorroborated; that, even if the "third car did perform as stated" by defendant Louis, the jury, in considering only the question as to the existence of the third car, overlooked evidence as to Louis' conduct just before and at the time he swerved which conduct was gross negligence; that, since appellants admittedly were not negligent and since defendant Louis drove upon the wrong side of the highway, the defendants (respondents) were required to prove that Louis was not guilty of any negligence which was a proximate cause of the accident, and that they failed to carry that burden of proof. Appellants assert further that Louis should have seen, prior to the accident, the embankment which partially obstructed the highway; that Louis was grossly negligent in trying to drive through the narrow passage, which remained for eastbound traffic, "without regard to how" the other car, in the lane to his right, "would get through" the passage; that Louis was negligent in turning to the left when he could have turned to the right and avoided the accident.

The above arguments pertain to questions of fact which were for the determination of the jury. This court is not empowered to weigh the evidence and determine the facts. The function of a reviewing court, with respect to the evidence, is to determine only the legal sufficiency of the evidence to support the judgment. If there was evidence which was legally sufficient to support the verdict, this court cannot disturb the findings of the jury. It is implied in the verdict that the jury believed the testimony of defendant Louis regarding the third car, and that he was not negligent. The evidence was legally sufficient to support the judgment.

Appellants also contend that the court erred in refusing their request that section 531, subdivision (a), of the

Vehicle Code be read to the jury as an instruction. That subdivision provides: "The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicle and the traffic upon, and the condition of, the roadway." It does not appear that defendant Louis was following the "third" automobile within the meaning of said subdivision. The automobile driven by Louis was in the marked traffic lane next to the center line and the other automobile was in the second or outer marked traffic lane. Furthermore, the court gave the following instructions relative to the duty of the driver of a vehicle upon a highway: 1. "It is the duty of the driver of a motor vehicle, using a public highway, to be vigilant at all times and to keep the vehicle under such control that to avoid a collision, he can stop as quickly as might be required of him by eventualities that would be anticipated by an ordinarily prudent driver in like position." 2. "No person shall drive a vehicle upon a highway at a speed greater than is reasonable or prudent, having due regard for the traffic on, and the surface and width of, the highway, and in no event at a speed which endangers the safety of persons or property." Those instructions, last mentioned, were applicable and adequate under the evidence here where the automobiles were in different traffic lanes.

Appellants also contend that the court erred in refusing to give an instruction, requested by them, which was as follows: "If the jury believes by a preponderance of the evidence that the defendant, Louis Bevilacqua, was in any manner negligent, even though it be only in the slightest degree, and that such negligence proximately contributed to the cause of said collision and resulting damage, then the plaintiffs are entitled to a verdict." The court gave instructions defining negligence, proximate cause, and ordinary care. It also gave an instruction as follows: "The issues to be determined by you in this case are these: First: Was the defendant, Louis Bevillaqua [Bevilacqua], negligent? If you answer that question in the negative, you will return a verdict for the defendants. If you answer it in the affirmative, you have a second issue to determine, namely: Was that negligence the proximate cause of any injury to the plaintiffs? If you answer that question in the negative, plaintiffs are not entitled to recover, but if you answer it in the affirmative, you then will find what damage plaintiffs thus have been caused to suffer and return a verdict in their favor for the amount thereof. . . ." The

court also gave the following instruction: "From the happening of the accident involved in this case, as established by the evidence, there arises an inference that the proximate cause of the occurrence was some negligent conduct on the part of the defendant. That inference is a form of evidence, and if there is none other tending to overthrow it, or if the inference preponderates over contrary evidence, it warrants a verdict for the plaintiff. Therefore, you should weigh any evidence tending to overcome that inference, bearing in mind that it is incumbent upon the defendant to rebut the inference by showing that he did, in fact, exercise ordinary care and diligence or that the accident occurred without being proximately caused by any failure of duty on his part." It was not error to refuse to give the requested instruction.

Appellants also contend that the court should have given their requested instruction which was to the effect that if the injuries sustained by plaintiffs were caused solely by Louis Bevilacqua's lack of knowledge, skill or experience in the operation of his automobile and that an ordinarily prudent, careful and skillful person operating an automobile under similar circumstances in the exercise of reasonable care and skill could have avoided such injuries, then "you" are instructed that defendant's lack of knowledge, skill or experience is negligence on his part. The instructions regarding negligence which were given were adequate with reference to the subject matter involved in this instruction. It was not error to refuse to give the instruction.

The judgment is affirmed, and the purported appeal from the order denying the motion for a new trial is dismissed.

Shinn, P. J., and Vallée, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied December 18, 1950.